**COLORADO CIVIL RIGHTS COMMISSION, Petitioner,**

**and**

**Dominic J. Gargano and Stephen S. Reffel, Complainants,**

v.

**NORTH WASHINGTON FIRE PROTECTION DISTRICT, Respondent.**

No. 87SC432.

Supreme Court of Colorado, En Banc.

April 17, 1989.

---

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Mary Ann Whiteside, First Asst. Atty. Gen., Denver, for petitioner.

Berger & Rothstein, P.C., David Berger, Commerce City, for respondent.

Legal Center Serving Persons with Disabilities Chester R. Chapman, Director of Legal Services Lynn L. Palma, Sr. Atty., Denver, for amicus curiae.

VOLLACK, Justice.

In *Gargano v. North Washington Fire Protection District*, 754 P.2d 393 (Colo. App.1987), the court of appeals reversed the decision of the Colorado Civil Rights Commission (Commission) and held that the North Washington Fire Protection District (District) did not engage in a discriminatory or unfair labor practice in violation of section 24–34–402(1)(a), 10A C.R.S. (1988), when it disqualified two of ten applicants for entry level firefighter positions because of a previously injured knee in the case of Stephen S. Reffel and uncorrected eyesight 20/40 or poorer in the case of Dominic J. Gargano.

We granted certiorari to determine whether Reffel and Gargano (applicants) were "handicapped" within the meaning of section 24–34–301(4), 10A C.R.S. (1988), and, if so, whether the District's medical disqualifications of the applicants were reasonable under section 24–34–402(1)(a). We conclude that the applicants were handicapped within the meaning of section 24–34–301(4) and applicable Colorado regulations because the applicants were perceived to be handicapped by the District. Genuine disputes remain as to whether the District refused to hire the applicants "because of handicap" and whether the District met its burden of showing the disqualifying factors were reasonable under the "business necessity" defense. We therefore reverse the judgment of the court of appeals and remand the case to the court of appeals with directions to remand the case to the court of appeals with directions to remand the case to the Commission for further hearings.

## I.

The applicants applied in January 1980 for an entry level firefighter position with the District. Both applicants passed a written examination, strength and agility

test, and personal interview. They were informed by the District Civil Service Committee in May 1980 that for one year their names would be placed on an "eligibility roster" for an entry level firefighter position. The eligibility roster was composed of ten persons ranked according to their scores on the tests and interview. Reffel was ranked fifth and Gargano was ranked tenth.

In March 1981, the ten applicants were directed to undergo a physical examination pursuant to rules promulgated by the Denver Civil Service Commission. They were examined by Dr. C. J. Roberts, the District medical examiner. Dr. Roberts learned that Reffel had injured his right knee in 1977 while playing basketball. Reffel had undergone surgery in 1977 to correct the basketball injury and again in 1980 to remove floating tissue fragments that had caused the knee to "lock up." Since then, Reffel had experienced no stiffness or locking up, and regained strength and flexibility in the knee. His health was otherwise excellent. At the time he was examined by Dr. Roberts, Reffel played racquetball and ran daily, and performed knee bends with three hundred pound weights on his shoulders.

Dr. Roberts realized that District regulations required disqualification of applicants with legs not free from stiffness or impairment of the joints unless the physical deficiency is waived by the medical examiner and approved by the Commission.[1] Dr. Roberts duly noted the injuries to Reffel's knee in his report.

Dr. Roberts also noted in his report that Gargano's uncorrected eyesight was 20/40 or poorer.[2] Gargano's eyesight was correctable with glasses or contact lenses to 20/20.

Each applicant was permitted to supplement the District medical examiner's evaluation with statements of other physicians concerning possible future effects of the deficiency on the job. Reffel provided letters from three physicians. All three agreed that to some extent Reffel's knee had degenerated since the most recent operation.[3] One doctor concluded that "there is no reason to believe Reffel would be unable to perform the job."[4] Another doctor concluded that, although Reffel "probably will have more difficulties with the knee" in the future, "the ultimate prognosis for this knee is fair to good."[5] A third doctor concluded that Reffel "should not be involved in work that puts stress on an already arthritic knee and he is best suited to a sedentary position."[6] Gargano provided a letter from a doctor who concluded that Gargano's vision is "certainly not hazardous to his proposed occupation as a fireman."[7]

Two entry level firefighter positions were available on May 8, 1981, when the

---

1. Department Regulation number 7, concerning physical and mental qualifications of applicants, provides in part:

 Certain specific deficiencies will disqualify [an applicant] unless waived by medical examiner and approved by the commission. Deficiencies that disqualify are generally the following:
 . . . .
 18. Limbs—arms, legs, hands and feet must be free from afflictions of the joints, stiffness, or other conditions such as flat feet, ingrown nails, or hammer toes.
 . . . .
 23. Rheumatism—any history of acute rheumatic fever, stiffening of the joints or other impairment.
 . . . .
 27. Any other impairment which might prevent the applicant from doing his assignment efficiently.

2. Gargano's uncorrected vision was 20/50 in his left eye and 20/100 in his right eye.

 Eyes requiring glasses or vision that tests 20/40 or poorer is a specific physical deficiency in Department Regulation number 7 that will disqualify an applicant unless waived by the medical examiner and approved by the Commission.

3. Dr. David D. Dobrow described the degeneration of Reffel's knee as "mild." Dr. H. Michael Tramutt described the condition as "some degenerative changes of the medial compartment." Dr. A.C. Lotman described the degeneration as "moderately advanced."

4. Letter of Dr. Tramutt, March 26, 1981.

5. Letter of Dr. Dobrow, March 13, 1981.

6. Letter of Dr. Lotman, March 26, 1981.

7. Letter of Dr. Stanley E. Black, May 5, 1981.

District Board of Directors met to consider the ten applicants on the eligibility roster. Reffel's name was removed from the eligibility roster because of his knee injury, and Gargano's name was removed from the eligibility roster because of his eyesight. The two entry level firefighter positions were then filled by the third and fourth applicants on the eligibility roster.[8] The eligibility roster expired the next day. Reffel and Gargano were informed of their medical disqualifications on May 11, 1981.

Reffel and Gargano filed separate charges of employment discrimination with the Commission in August 1981. They alleged that they were handicapped within the meaning of section 24–34–301(4). Their claims were founded not on the basis of "having" a physical impairment which substantially limits one or more of a person's major life activities, but on the basis that they were "being regarded [by the District] as having such an impairment." After the Commission found there was probable cause to believe that the District engaged in discriminatory or unfair labor practices against the applicants in violation of section 24–34–402(1)(a), the cases were consolidated and submitted to a Commission hearing officer (now called an administrative law judge) on stipulated facts with additional testimonial and documentary evidence provided by all parties. The District filed a motion for summary judgment, contending that the applicants were neither handicapped nor perceived to be handicapped. The District also claimed it was justified in disqualifying the applicants for medical reasons to ensure the safety of themselves, other firefighters, and the public. The applicants also moved for summary judgment.

On January 19, 1984, the hearing officer granted in part the applicants' motion for summary judgment. He concluded that both Reffel and Gargano were handicapped within the meaning of section 24–34–301(4),[9] but determined that a genuine dispute remained as to whether the District's medical disqualifying factors were reasonably related to the entry level firefighting job. He ordered a hearing on the issue of the reasonableness of the medical disqualifying factors.

Both the District and the applicants appealed the hearing officer's decision to the Commission. On March 8, 1985, the Commission affirmed the decision of the hearing officer in part and reversed in part. It agreed with the hearing officer that the applicants were handicapped within the meaning of section 24–34–301(4). It also concluded, however, that as a matter of law the District's disqualifying factors were not reasonably related to safety of themselves, other firefighters, or the public, because the disqualifying criteria "had never been empirically validated and because current [firefighters] are not held to the same medical-physical standards required of new applicants."[10] The Commission concluded that the District had engaged in a discriminatory employment practice in violation of section 24–34–402(1)(a) and granted the applicants' motion for summary judgment in its entirety.[11]

8. The third and fourth applicants were chosen because the first and second applicants were unavailable for hire on May 8, 1981.

9. The hearing officer found that both applicants were handicapped within the meaning of § 24–34–301(4) because they were incorrectly perceived to have a present physical impairment which substantially limits one or more of a person's major life activities. Reffel was found not to have a present physical impairment. Gargano was found to have a present physical impairment, but his impairment was found not to substantially limit one or more of a person's major life activities.

10. As the Commission notes, the District permits current firefighters with deficiencies such as those that disqualified the applicants to remain firefighters. Regular or annual medical examinations of current firefighters were conducted on a voluntary basis except when there was a reasonable suspicion that the firefighter had one of the disqualifying deficiencies. If the District suspected that a current firefighter possessed one of the disqualifying deficiencies, it could order the firefighter to undergo a physical examination. If a disqualifying deficiency was found, the District would give individual consideration as to whether to terminate the firefighter.

11. The Commission held that the hearing officer erred in failing to enter summary judgment in favor of the claimants on the issue of reason-

The Commission ordered the District to hire the applicants when the next two positions arose and to pay them back pay, fringe benefits, and interest.

Having exhausted administrative remedies, the District sought judicial review of the Commission's decision in the court of appeals. The court of appeals reversed the Commission decision in *Gargano v. North Washington Fire Protection District*, 754 P.2d 393 (Colo.App.1987). The court of appeals disagreed with the conclusion of the hearing officer and Commission that the applicants were "handicapped" within the meaning of section 24–34–301(4). The court of appeals concluded that there was no evidence to support the contention that the District regarded the applicants as being " 'substantially' limited in any 'major life activity.' " 754 P.2d at 395. Instead, the court of appeals held that the District simply regarded the applicants "as limited only with regard to specific job-related functions and risks of fighting fires." *Id.* Because neither applicant alleged that his particular physical impairments limited him in any way other than in obtaining employment as a firefighter, the court of appeals concluded that Reffel and Gargano failed to demonstrate that their physical deficiencies imposed a "substantial limitation" of any "major life activity," and were therefore not handicapped within the meaning of section 24–34–301(4). *Id.* at 395–96. The court of appeals held that the Commission abused its discretion in finding that the applicants were handicapped and ordered the applicants' claims to be dismissed.

## II.

Section 24–34–402(1)(a) of the Colorado Antidiscrimination Act (Colorado Act) provides that the following is a discriminatory or unfair employment practice:

For an employer to refuse to hire, to discharge, to promote or demote, or to discriminate in matters of compensation against any person otherwise qualified because of handicap, race, creed, color, sex, age, national origin, or ancestry; but, with regard to a handicap, it is not a discriminatory or an unfair employment practice for an employer to act as provided in this paragraph (a) if there is no reasonable accommodation that the employer can make with regard to the handicap, the handicap actually disqualifies the person from the job, and the handicap has a significant impact on the job[.]

10A C.R.S. (1988).

 The Colorado Act does not contain a general statement of purpose. Such a statement, however, is contained in the Commission's Substantive Rules Prohibiting Discrimination on Account of Physical Handicap:

The purpose of the rules prohibiting discrimination on account of physical handicap is to ensure compliance with the provisions of C.R.S. 1973, Title 24, Article 34, Parts 3 through 7 (the law) as the provisions relate to persons who may be discriminated against on account of physical handicap in employment, housing, public accommodations and advertising. The rules express the Colorado Civil Rights Commission's interpretation of the law and indicate factors which the Commission will take into consideration in determining whether or not there has been a violation of the law.

To make out a *prima facie* case of employment discrimination under section 24–34–402(1)(a), an applicant bears the burden of showing that he or she is handicapped within the meaning of section 24–34–301(4), that the applicant was otherwise qualified to perform the job, and that an employer refused to hire the applicant "because of

---

ableness of the District's disqualifying factors because the hearing officer "apparently did not consider the depositions which were filed only with the Colorado Civil Rights Division Clerk." The contents of these depositions, however, were neither identified nor described in the Commission's findings of fact and conclusions of law. Each fact pertaining to the reasonableness of the District's disqualifying factors con-

tained in the Commission's findings of fact is present in the hearing officer's findings of fact. The only pertinent additions to the hearing officer's findings made by the Commission are references to two cases. As a result, it is impossible for this court to determine whether the hearing officer failed to consider facts which would require the entry of summary judgment.

handicap." Once these three conditions are met, the burden shifts to the employer to show that there is no reasonable accommodation that the employer can make with regard to the handicap, that the handicap actually disqualifies the applicant from the job, and that the handicap has a significant impact on the job. Section 24–34–402(1)(a); *see Gamble v. Levitz Furniture Co. of the Midwest, Inc.*, 759 P.2d 761, 765 (Colo.App.) (discriminatory discharge), *cert. granted*, No. 88SC203 (Colo. Aug. 22, 1988); *Colorado Civil Rights Comm'n v. ConAgra Flour Milling Co.*, 736 P.2d 842, 846 (Colo. App.1987) (discriminatory demotion); *see also Silverstein v. Sisters of Charity*, 43 Colo.App. 446, 448, 614 P.2d 891, 893 (1979) (discriminatory refusal to hire in violation of section 24–34–801(1)(b)). If the employer presents credible evidence that reasonable accommodation would not be possible, the applicant must go forward with evidence of his or her individual capabilities as well as suggestions for possible accommodation. The ultimate burden of persuasion as to reasonable accommodation rests with the employer. *Cf. Prewitt v. United States Postal Serv.*, 662 F.2d 292, 308 (5th Cir.1981) (interpreting Federal Act).

■ In addition to the defense of inability to provide reasonable accommodation, the defense of "business necessity" is available to employers in employment discrimination cases. The business necessity defense was created by federal courts to permit employers to rebut a *prima facie* case of employment discrimination in Title VII cases. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853–54, 28 L.Ed.2d 158 (1971) (test disqualifying applicants on basis of race must be "demonstrably a reasonable means of job performance"). Employers must show that the challenged criteria are "necessary to safe and efficient job performance." *Dothard v. Rawlinson*, 433 U.S. 321, 331 n. 14, 97 S.Ct. 2720, 2728 n. 14, 53 L.Ed.2d 786 (1977) (Title VII challenge to disqualification from prison guard position of women weighing less than 120 pounds). The business necessity defense has subsequently been applied to cases of employment discrimination under both federal and state antidiscrim-ination laws. *Maine Human Rights Comm'n v. Canadian Pac. Ltd.*, 458 A.2d 1225, 1233 n. 16 (Me.1983).

The term "handicap" is defined in section 24–34–301(4) as "a physical impairment which substantially limits one or more of a person's major life activities and includes a record of such an impairment and being regarded as having such an impairment." The section 24–34–301(4) definition of handicap is virtually identical to the definition of handicap in Rule 60.1(B)(1) of the Commission's Substantive Rules Prohibiting Discrimination on Account of Physical Handicap. *See* 3 Code Colo.Reg. 708–1, at 15 (1980). The terms "physical impairment," "major life activities," and "is regarded as having an impairment," while not defined in section 24–34–301, are defined in Rule 60.1(B)(1):

a. "Physical impairment" means any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems including, but not limited to: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive; genital-urinary; hemic and lymphatic; skin; and endocrine.

b. "Major life activities" means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, touching, learning, and working.

. . . .

d. "Is regarded as having an impairment" means (1) has a physical impairment which does not substantially limit major life activities but is treated by a person subject to the law as constituting such a limitation; (2) has a physical impairment which substantially limits major life activities only as a result of the attitudes of others towards such impairment; or (3) has no impairment but is treated as having an impairment by a person subject to the law.

*See also* 45 C.F.R. § 84.3(j) (1988) (federal regulatory definitions identical to definitions in Rule 60.1(B)(1)). These definitions were promulgated by the Commission,

which is the agency charged with enforcement of section 24–34–402(1)(a), and are entitled to substantial deference.

The Colorado Act largely parallels the 1974 amendments to the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–96 (1982) (Federal Act). *See Gamble,* 759 P.2d at 763. Section 504 of the Federal Act prohibits a federally funded state program from discriminating against handicapped individuals solely by reason of their handicap. *School Bd. v. Arline,* 480 U.S. 273, 275, 107 S.Ct. 1123, 1125, 94 L.Ed.2d 307 (1986). The definition of "handicapped individual" in section 504 was amended in 1974 to include "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." *See* 29 U.S.C. § 706(7)(B); *see also* 29 C.F.R. § 32.3 (1986); 45 C.F.R. § 84.3(j)(1).

The 1974 amendment to the section 504 definition of handicap

> reflected Congress' concern with protecting the handicapped against discrimination stemming not only from simple prejudice, but from "archaic attitudes and laws" and from "the fact that the American people are simply unfamiliar with and insensitive to the difficulties confront[ing] individuals with handicaps." S.Rep. No. 93–1297, p. 50 (1974). To combat the effects of erroneous but nevertheless prevalent perceptions about the handicapped, Congress expanded the definition of "handicapped individual" so as to preclude discrimination against "[a] person who has a record of, or is regarded as having, an impairment [but who] may at present have no actual incapacity at all." *Southeastern Community College v. Davis,* 442 U.S. 397, 405–406, n. 6 [99 S.Ct. 2361, 2366–67 n. 6, 60 L.Ed.2d 980] (1979).

*Arline,* 480 U.S. at 279, 107 S.Ct. at 1126–27 (footnote omitted) (interpreting Federal Act). The Federal Act clearly was intended to bring within its protection three classes of people who may suffer from discriminatory conduct: those who present-

ly have an impairment, those who have had an impairment in the past, and those who are regarded by others as having an impairment. *Gamble,* 759 P.2d at 764. Because the Colorado Act was patterned after the Federal Act, we will consider cases construing the Federal Act for guidance in interpreting the Colorado Act. *See Probasco v. Iowa Civil Rights Comm'n,* 420 N.W. 2d 432, 435 (Iowa 1988).

■ Not all persons with physical impairments are entitled to relief under the statute. The section 24–34–301(4) definition of handicap extends to persons with a physical impairment "which *substantially* limits one or more of a person's *major* life activities." (Emphasis added). The interpretation limiting the class of people entitled to relief under the statute

> assures that truly disabled, but genuinely capable, individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps. It would debase this high purpose if the statutory protections available to those truly handicapped could be claimed by anyone whose disability was minor and whose relative severity of impairment was widely shared. Indeed, the very concept of an impairment implies a characteristic that is not commonplace and that poses for the particular individual a more general disadvantage in his or her search for satisfactory employment.

*Forrisi v. Bowen,* 794 F.2d 931, 933 (4th Cir.1986) (interpreting Federal Act); *see also Jasany v. United States Postal Serv.,* 755 F.2d 1244, 1249 (6th Cir.1985) (interpreting Federal Act). The degree to which an impairment substantially limits an individual's employment potential must be determined on a case-by-case basis with reference to a number of factors, including the number and types of jobs from which the impaired applicant is disqualified, the geographical area to which the impaired applicant has access, and the expectations and training of the applicant. *E.E. Black, Ltd. v. Marshall,* 497 F.Supp. 1088, 1100–01 (D. Hawaii 1980) (interpreting Federal Act); *see also Arline,* 480 U.S. at 287, 107 S.Ct. at 1130–31 (determination of whether hand-

icapped applicant is "otherwise qualified" under Federal Act requires individualized inquiry); *cf. Silverstein,* 43 Colo.App. at 449, 614 P.2d at 894 (section 24–34–801(1)(b) requires employer to give "individual consideration" to determine whether reasonable accommodation could be made in hiring of otherwise qualified applicant).

With these principles in mind, we turn to the merits of the case, realizing that our task in interpreting the Colorado Act is to ascertain and effectuate the intent of the General Assembly in light of the statute's remedial purpose. If a plain reading does not reveal that intent, we may interpret the statute by considering the object sought to be served; the circumstances sought to be attained; the legislative history; the common law or former statutory provisions, including laws upon the same or similar subjects; the consequences of a particular construction; the administrative construction of the statute; and the legislative declaration or purpose. § 2–4–203, 1B C.R.S. (1980).

### III.

#### A.

##### Applicants' Burden

The applicants must show that they are handicapped within the meaning of section 24–34–301(4), that they are otherwise qualified to perform the entry level firefighter job, and that they were denied employment "because of handicap." We conclude as a matter of law that both Reffel and Gargano were handicapped within the meaning of section 24–34–301(4) and that they were otherwise qualified. A genuine dispute remains, however, as to whether they were denied employment because of handicap.

##### 1.

##### *Handicap under § 24–34–301(4)*

The applicants argue that the court of appeals misinterpreted section 24–34–301(4) by concluding that an applicant whose impairment does not substantially limit one or more of a person's major life activities cannot be "regarded as having an impairment." We agree.

A person "is regarded as having an impairment" under Rule 60.1(B)(1)(d) in three circumstances: first, although the person has a physical impairment, the impairment does not substantially limit one or more of the person's major life activities yet the employer treats the person as being substantially limited in one or more major life activities; second, the person has a physical impairment which substantially limits one or more of a person's major life activities but does so only as a result of the employer's attitudes; and third, the person has no physical impairment but is treated by the employer as having an impairment. *See also* 45 C.F.R. § 84.3(j)(2)(iv) (identical to Rule 60.1(B)(1)(d)).

Rule 60.1(B)(1)(d)(1) clearly contemplates that an applicant could be "regarded as having an impairment" when he or she has a physical impairment but the impairment does not substantially limit one or more major life activities, so long as the employer treats the applicant's impairments as substantially limiting one or more of the person's major life activities. *Cf. Southeastern Community College v. Davis,* 442 U.S. 397, 405–06, 99 S.Ct. 2361, 2366–67, 60 L.Ed.2d 980 (1979) (interpreting Federal Act); S.Rep. No. 93–1297, 93d Cong. 2d Sess. (1974), *reprinted* in 1974 U.S.Code Cong. & Admin.News 6373, 6389–90. The District's treatment of Gargano falls into the Rule 60.1(B)(1)(d)(1) category.

The District argues and the court of appeals agreed that the Rule 60.1(B)(1)(d)(1) definition does not apply because the District did not treat the applicants as being substantially limited in one or more of their major life activities, but rather as being limited only with regard to specific job-related functions and risks of fighting fires. We find this argument irrelevant to the question of whether an applicant is handicapped within the meaning of section 24–34–301(4) by virtue of an erroneous perception of handicap.

In *Brown County v. Labor & Industry Review Commission,* 124 Wis.2d 560, 369 N.W.2d 735 (1985), the Wisconsin Supreme Court found that an applicant for a deputy

sheriff position who was refused employment because of uncorrected eyesight in each eye of 20/400, correctable to 20/20, was handicapped within the meaning of the Wisconsin Fair Employment Act, a statute similar to the Colorado Act. He was found to be handicapped not because of an actual handicap but because he was erroneously perceived to be handicapped. The court's reasoning is instructive:

> There is no doubt that the county perceived him as handicapped, because it rejected him solely for his failure to meet the uncorrected vision standards which it required for employment eligibility. The county believed, in other words, that [the applicant's] visual impairment limited his ability to perform on the job. Therefore, under the facts as developed to date in these proceedings, it appears that [the applicant] has been categorized as a handicapped person and, on the basis of that categorization, has been denied the opportunity to work at a particular employment, even though he may, in fact, be properly qualified. This is exactly the type of treatment which the Wisconsin Fair Employment Act denominates as discriminatory and prohibits. The burden, accordingly, now falls upon the county to show that [the applicant] cannot perform the work.

124 Wis.2d at 573, 369 N.W.2d at 741; *see also City of La Crosse Police & Fire Comm'n v. Labor & Indus. Review Comm'n*, 139 Wis.2d 740, 760–64, 407 N.W.2d 510, 518–19 (1987) (applicant for police officer position receiving only a "B" rating on back strength test was erroneously perceived as handicapped).

Accepting this reasoning, we agree with the applicants that the court of appeals erred in concluding that the District did not regard Gargano to be handicapped. We hold as a matter of law that Gargano is handicapped within the meaning of section 24–34–301(4) because the District treated him as being substantially limited in one or more major life activities even though he possessed no such substantial limitation.

▬ Rule 60.1(B)(1)(d)(3) provides that an applicant "is regarded as having an impair-

ment" even if the person has no impairment, so long as the employer treats the applicant as having an impairment. This category protects individuals who may be completely recovered from a previous impairment or who may be erroneously classified as having an impairment. *de la Torres v. Bolger*, 610 F.Supp. 593, 597 (N.D.Tex.1985) (interpreting identical definition in regulation to Federal Act), *aff'd*, 781 F.2d 1134 (5th Cir.1986). The District's treatment of Reffel clearly falls into the rule 60.1(B)(1)(d)(3) category, either by virtue of his recovery from previous impairment or by virtue of his lack of present physical impairment. We agree that the court of appeals erred in concluding that the District did not regard Reffel to be handicapped. We hold as a matter of law that Reffel is handicapped within the meaning of section 24–34–301(4) because the District treated him as having a physical impairment when he had no such impairment.

Our holding that the court of appeals erred in concluding that the applicants were not handicapped within the meaning of section 24–34–301(4) in no way limits the ability of employers such as the District to consider the specific job-related functions and risks in deciding whether to disqualify otherwise qualified handicapped individuals from employment opportunities. Such a practice, however, raises an inference of discriminatory employment practices under the Colorado Act. If the applicant can make out a *prima facie* case of employment discrimination, then the employer must bear the burden of showing that the qualification is justified under the "business necessity" defense, or that, under section 24–34–402(1)(a), there is no reasonable accommodation that the employer can make with regard to the handicap, that the handicap actually disqualifies the applicant from the job, and that the handicap has a significant impact on the job.

### 2.

### *Otherwise Qualified*

▬ The record indicates that the applicants are "otherwise qualified." An otherwise qualified person is one who is able

to meet all of the program's requirements in spite of his handicap. *Southeastern Community College v. Davis,* 442 U.S. 397, 406 n. 7, 99 S.Ct. 2361, 2367 n. 7, 60 L.Ed.2d 980 (1979); *cf.* 45 C.F.R. § 84.3(k)(1) (defining "qualified handicapped person" under Federal Act with respect to employment). Both applicants scored well enough on the written, oral, and strength and agility tests to be placed on the eligibility list despite their physical deficiencies. Their scores objectively show that they are otherwise qualified for the entry level firefighter position.

### 3.

### *Refused Employment "Because of Handicap"*

██ The applicants argue that the Commission properly determined as a matter of law that they were refused employment "because of [their] handicap[s]." We disagree.

Summary judgment is a drastic remedy which may not be imposed unless there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. *Americans United for Separation of Church & State Fund, Inc. v. State,* 648 P.2d 1072, 1087 (Colo.1982); C.R.C.P. 56(c). In deciding whether summary judgment is appropriate, the reviewing court must view the facts in the light most favorable to the party opposing the motion for summary judgment. *Tapley v. Golden Big O Tires,* 676 P.2d 676, 678 (Colo.1983).

In this case we believe a genuine issue remains as to whether the applicants were refused employment because of their handicap or because their scores were not high enough to be offered an entry level firefighter position. Construing the facts in the light most favorable to the District, the record shows that neither Reffel nor Gargano was in position to be considered for the firefighter position on May 8, 1980 because the two positions available on that day were filled by the third and fourth applicants on the eligibility list, and because the eligibility list was disbanded the next day pursuant to District Civil Service Committee rules.

This does not mean that the District is entitled to summary judgment. Rather, the case must be remanded to the Commission for further factual findings by an administrative law judge. If the administrative law judge determines that the applicants were refused employment because the positions were filled by higher scoring applicants before Reffel and Gargano could be considered for the positions, then the applicants' claims of discriminatory employment practices under section 24–34–402(1)(a) must be dismissed for failure to make out a *prima facie* case.

### B.

### District's Burden

If on remand the administrative law judge determines that the District refused to hire the applicants because of their respective handicaps, then the applicants will have made out a *prima facie* case of employment discrimination. Under section 24–34–402(1)(a), the burden then shifts to the District to show by a preponderance of the evidence that the disqualifying factors were justified under the business necessity defense or that there is no reasonable accommodation that the employer can make with regard to the handicap, that the handicap actually disqualifies the applicant from the job, and that the handicap has a significant impact on the job.

The court of appeals did not determine whether the Commission erred in concluding as a matter of law that the medical factors used to disqualify the applicants were reasonable because the court of appeals held that the applicants were not handicapped within the meaning of section 24–34–301(4). The conclusion of the Commission concerning the reasonableness of the medical disqualifying factors assumes greater significance, however, because of our determination that the court of appeals should have concluded that the applicants *were* handicapped within the meaning of section 24–34–301(4). Accordingly, we must consider the propriety of the Commis-

sion's conclusion that the District's medical disqualifying factors were unreasonable.

 The District argues that its disqualifications of the applicants were reasonable as a matter of law because it permitted the applicants to supplement the report of the District medical examiner with testimony from other physicians as to the medical qualification of each applicant. In addition, the District argues that its medical disqualifying factors were reasonably related to protecting the safety of the applicant, other firefighters, and the public. The applicants argue that the District's use of medical disqualifying factors was unreasonable as a matter of law because it did not conduct empirical tests to determine whether there is a reasonable relationship between these factors and the ability to do the job and because the same standards do not apply to firefighters who are already on the job. We conclude that a genuine dispute remains as to the reasonableness of the District's medical disqualifying factors.

The District did not promulgate the medical disqualifying factors at issue in this case. The District obtained these disqualifying factors from the Denver Civil Service Commission.[12] The record does not reveal whether the Denver Civil Service Commission determined through empirical research whether the disqualifying factors were reasonably related to the ability to perform the functions of an entry level firefighter. It is undisputed, however, that the District did no independent research to determine whether the disqualifying factors were reasonably related to job performance.

The hearing officer concluded that the District did not automatically disqualify the applicants when the medical examiner discovered that Gargano and Reffel possessed deficiencies found on the list of disqualifying factors obtained from the Denver Civil Service Commission. The hearing officer found that the District gave individual consideration to each applicant because Gargano and Reffel were permitted to present additional medical evaluations and because the District hiring board was free to disregard the District medical evaluator's recommendation. The hearing officer found that the fact that "[c]urrent firefighters are not held to the same medical standards as applicants" was sufficient to "support[ ] a *prima facie* case of discrimination."

The Commission found that no dispute remained as to whether the District's disqualifying factors were reasonable. It held that the District's business necessity defense was without merit because "current employees are not held to the same medical-physical standards required of new applicants" and because the criteria "have not been objectively validated in any manner."

"Validation" in the context of the business necessity defense refers to the process of demonstrating a "manifest relationship" between the factor which disqualifies an otherwise qualified handicapped individual and the employment in question. *Craig v. County of Los Angeles*, 626 F.2d 659, 662 (9th Cir.1980) (employment discrimination under Title VII), *cert. denied,* 450 U.S. 919, 101 S.Ct. 1364, 67 L.Ed.2d 345 (1981); *see also Griggs*, 401 U.S. at 432, 91 S.Ct. at 854. The validation process involves three distinct steps.

The employer must first specify the particular trait or characteristic which the selection device is being used to identify or measure. The employer must then determine that that particular trait or characteristic is an important element of work behavior. Finally, the employer must demonstrate by "professionally acceptable methods" that the selection device is "predictive of or significantly correlated" with the element of work behavior identified in the second step. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 431, 95 S.Ct. 2362, 2378, 45 L.Ed.2d 280 (1975); *Craig*, 626 F.2d at 662. The hearing officer and Commission did not apply this three-part validation test to deter-

**12.** The District medical evaluator testified that he accepted the medical disqualification list without inquiring how the list was formulated or developed. The medical evaluator stated that he used the Denver list because Denver hires more firefighters than any other department or district in the region.

mine the reasonableness of the factors used to disqualify Reffel and Gargano.

A genuine dispute remains as to whether the disqualifications of Reffel and Gargano were justified under the business necessity defense. The experts were in disagreement as to the likelihood that Reffel's knee would become impaired in the future under the particular physical demands of the firefighter position. Viewing these facts in the light most favorable to the District, we conclude that a genuine dispute remains as to whether Reffel's knee disqualifies him from the position.

The chairman of the District board of directors stated that firefighters were unable to wear glasses or contact lenses when wearing a "Scott pack" oxygen unit because of the likelihood of imperfect sealing of the mask which lets smoke seep in and causes tearing. Viewing this fact in the light most favorable to the District, we conclude that a genuine dispute remains as to whether Gargano's eyesight disqualifies him from the firefighter position.

Finally, we agree with the District that the Commission should not have granted summary judgment in favor of the applicants on the issue of reasonableness of the disqualifying factors simply because the District applied a physical health standard more strict to applicants than to current firefighters. As the Kansas Supreme Court noted in upholding the constitutionality of a regulation prohibiting applicants for police officer positions from being hired with uncorrected vision of 20/50 or poorer even though the current police officers were not required to meet as strict a visual acuity standard:

> The visual acuity standard for new recruits was relatively new to the Topeka Police Department when this case arose. As a result, a number of officers already on the force could not meet it if called upon to do so. It would be poor public policy to hold that a police department cannot upgrade its officers by imposing standards without terminating all existing officers who could not meet the new standards.

*Padilla v. City of Topeka*, 238 Kan. 218, 708 P.2d 543, 548 (1985).

IV.

Two genuine issues of material fact remain to be resolved by the administrative law judge. The administrative law judge must decide first whether the applicants were refused employment "because of handicap" under section 24–34–402(1)(a) or because the positions were filled by higher scoring applicants before Reffel and Gargano could be considered for the positions. If the administrative law judge determines that the applicants were not denied employment "because of handicap," then the claims must be dismissed. If the administrative law judge determines that the District refused to hire the applicants because of their respective handicaps, then the administrative law judge must decide whether the District has met its burden of showing that the disqualifying factors were reasonable under the business necessity defense.

The judgment of the court of appeals is reversed. The case is remanded to the court of appeals with directions to remand to the Commission for further hearings consistent with this opinion.