**James S. BURRILL, Plaintiff,**

v.

**GTE GOVERNMENT SYSTEMS CORPORATION, Defendant.**

**Civ. A. No. 91–A–2172.**

United States District Court,
D. Colorado.

Sept. 10, 1992.

1357

Stephanie H. Yukawa, Sears, Anderson & Swanson, P.C., Colorado Springs, Colo., for plaintiff.

Sandra Spencer Coleman, Lina C. George–Sauro, White and Steele, P.C., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

ARRAJ, District Judge.

This diversity action was brought by James S. Burrill against his former employer, GTE Government Systems Corporation, alleging breach of an employment agreement and breach of an express covenant of good faith and fair dealing.[1] The defendant has moved for summary judgment pursuant to Fed.R.Civ.P. 56. Jurisdiction is proper under 28 U.S.C. § 1332. I have reviewed the briefs and exhibits submitted in this matter and conclude that oral argument would not materially assist my decision. I therefore find and rule as follows.

### FACTUAL BACKGROUND [2]

James S. Burrill ("Burrill") began his employment with GTE Government Systems Corporation ("GTE") on July 9, 1990. Burrill was hired as the Program Manager for the Joint SPACECOM Intelligence Center ("JSIC") Program at GTE's Colorado Springs, Colorado facility. Prior to his hiring, the JSIC Program had been experiencing significant problems. Burrill was made aware of these problems and understood that it was his responsibility to solve them.

Burrill requested a written employment contract from GTE, but this request was denied. Additionally, no express promises were made to him either at the time of hiring or during the course of his employ-

---

1. The plaintiff's amended complaint also includes a claim for relief alleging outrageous conduct. The plaintiff moved to dismiss this claim on August 5, 1992.

2. These facts are taken from those stipulations contained in the Pretrial Order filed July 13, 1992.

ment to the effect that his employment relationship with GTE would last for a definite period of time. Burrill did, however, receive oral representations when he was hired and after he began his employment that GTE was "committed to its employees" and that it had a philosophy of trying to keep its employees employed.

The JSIC Program continued to experience difficulties during the course of Burrill's tenure as Program Manager, although some of these problems were not attributable to his performance. The United States, as GTE's client in the JSIC Program, paid GTE an award fee every six months based on GTE's performance. For the period running from September 1989, the date of the Program's inception, to March 1990, the award fee was 41.5% out of a possible award fee of 100%. GTE was awarded a 46% award fee for its work from April 1990 through September 1990, and the third award period, October 1990 to March 1991, resulted in a 70% award fee to GTE. This was the highest award fee received by GTE in connection with the JSIC Program.

As Program Manager, Burrill was required to work closely with certain representatives of the United States, specifically Colonel William Stone ("Stone") and William Duncan ("Duncan"). Burrill experienced difficulty working with these government representatives during his tenure. Problems and concerns regarding the JSIC Program and Burrill's management were discussed with him by his superiors.

On April 18, 1991, after meeting with Stone, GTE's upper management concluded that Burrill had to be removed as the JSIC Program Manager. This was effected the next day, April 19, 1991. GTE made certain attempts to find another position for Burrill within the company. Following this unsuccessful effort, Burrill was "laid off" by GTE effective April 26, 1991.

## DISCUSSION

### I. BREACH OF EMPLOYMENT AGREEMENT

The plaintiff's first claim for relief alleges that the parties entered into an implied employment contract evidenced by several written and oral agreements, including employee performance evaluations and the policies and procedures contained in GTE's Supervisor's Personnel Handbook ("Handbook"). Burrill alleges that GTE terminated him in violation of these policies and procedures and seeks compensatory damages. GTE has moved for summary judgment on this claim arguing that Burrill was an "at will" employee without an express contract who could be terminated at any time. GTE argues that none of the exceptions to the at will doctrine apply, and that, in any event, it followed the procedures contained in the Handbook.

■ The law in Colorado is clear that an employee hired for an indefinite period of time is an "at will" employee, "whose employment may be terminated by either party without cause and without notice, and whose termination does not give rise to a cause of action." *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708, 711 (Colo. 1987). There is thus a presumption that in the absence of an express contract for a definite period, an employee has been hired on an at will basis. This presumption, however, "should not be considered absolute but rather should be rebuttable under certain circumstances." *Id.* Burrill does not dispute the fact that he did not receive an express written employment contract. In fact, he requested a three year contract, but was told that such an option was not available with GTE. Burrill was therefore hired for an indefinite period. He argues, however, that two exceptions to the at will presumption are applicable to this case. The first exception requires the employee to show that the employer's policies or the provisions of an employee handbook expressly or impliedly formed an employment contract between the parties altering the at will nature of the employment relationship. The second exception requires the employee to show that he relied on the employer's policies or the provisions of an employee handbook to his detriment, and that the employer should be prohibited under the doctrine of promissory estoppel from denying the existence of an employment con-

tract. *Keenan*, 731 P.2d at 711–712; *see also Allabashi v. Lincoln National Sales Corp.*, 824 P.2d 1, 2 (Colo.App.1991).

### A. Implied Employment Contract

■ To satisfy *Keenan*'s first exception to the at will presumption, "an employee must show that the employer's promulgation of termination procedures was an offer and that the employee's initial or continued employment constituted acceptance of that offer." *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1348 (Colo.1988). An employee handbook or personnel manual can be "construed as an offer which was accepted by an employee's continuing to work and foregoing his or her option of terminating employment and looking for employment elsewhere." *Id.* The employee must:

> demonstrate, first, that in promulgating the termination procedures the employer was making an offer to the employee—that is the employer manifested his willingness to enter into a bargain in such a way as to justify the employee in understanding that his assent to the bargain was invited by the employer and the employee's assent would conclude the bargain, ...—and second, that his initial or continued employment constituted acceptance of and consideration for those procedures.

*Keenan*, 731 P.2d at 711 (footnote omitted). The Colorado Supreme Court adopted in part the reasoning of the Supreme Court of Michigan which stated:

> No pre-employment negotiations need take place and the parties' minds need not meet on the subject; nor does it matter that the employee knows nothing of the particulars of the employer's policies and practices or that the employer may change them unilaterally. It is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, whatever the personnel policies and practices, they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee. The employer has then created a situation "instinct with an obligation."

*Churchey*, 759 P.2d at 1348–49 (quoting *Toussaint v. Blue Cross & Blue Shield*, 408 Mich. 579, 613, 292 N.W.2d 880, 892 (1980)); *see also Adams County School District No. 50 v. Dickey*, 791 P.2d 688, 693 (Colo.1990).

GTE argues that Burrill's unsuccessful request for a written contract at the time of his hiring coupled with his signature on the employment application act to defeat any claim that he is anything but an at will employee. The employment application, signed by Burrill on May 16, 1990, states:

> I understand that, if employed, I will be bound by all GTE policies, work rules and regulations, the terms and conditions of which may be changed without notice to me. *I further understand that my employment is for no definite period of time and is terminable at will by the Company or myself with or without cause or notice.*

(emphasis added).

In *Therrien v. United Air Lines, Inc.*, 670 F.Supp. 1517, 1523 (D.Colo.1987), this Court stated:

> I cannot see how an employee's claims of implied contract and promissory estoppel could ever be allowed to stand where that employee has signed a statement acknowledging his understanding that his employment was terminable at any time without cause.

At the time *Therrien* was decided, Colorado's appellate courts had not yet considered the effect of disclaimers on the doctrines of implied contract and promissory estoppel. Since that decision, however, the issue has been addressed.

In *Cronk v. Intermountain Rural Electrical Ass'n*, 765 P.2d 619 (Colo.App.1988) (*Cronk I*), the Court of Appeals reversed a trial court's decision to grant summary judgment in favor of an employer which had been based in part on a disclaimer contained in an employee manual. The basis of this reversal appears to have been that the disclaimer was added to the manual after the plaintiffs commenced their em-

ployment.[3] The Court added that because the plaintiffs asserted that they had relied on the manual provisions concerning termination, "controverted issues of material fact remained concerning whether [the employer] was contractually bound by the terms of the employee manual." *Id.* at 623.

In *Ferrera v. A.C. Nielsen,* 799 P.2d 458 (Colo.App.1990), the Court of Appeals distinguished *Cronk,* and concluded that a employee handbook which 1) contained a conspicuous disclaimer on its first page, 2) did not provide that employees could only be discharged for just cause and 3) did not require "progressive discipline" in all cases "as a matter of law ... did not constitute a contract limiting [the employer's] right to terminate employees." *Ferrera,* 799 P.2d at 461. The Court cited *Therrien* adding that "[s]ummary judgment denying claims based on a handbook is appropriate if the employer has clearly and conspicuously disclaimed intent to enter a contract limiting the right to discharge employees." *Id.*

In *Allabashi v. Lincoln National Sales Corp.,* 824 P.2d 1 (Colo.App.1991), another case involving a disclaimer in an employee manual, the Court of Appeals held that despite the disclaimer, "other documents provided to plaintiff contain termination procedures and policies. These policies require just cause for involuntary termination and provide for specific procedures to be followed in the event of such a dismissal." *Id.* at 3. The Court thus ruled that facts had been presented "which create[d] an issue as to whether an employment contract existed." *Id.*

*Cronk I, Ferrera* and *Allabashi* do not establish a particularly clear analytical framework within which to examine the effects disclaimers have on claims asserting the existence of implied employment contracts. Each of the cases is fairly fact specific. In this case, GTE's Supervisor's Personnel Handbook does not contain any type of disclaimer.[4] The Handbook gives

GTE managers the right to discharge employees for "just cause in accordance with established Company policies and practices," and sets out a corrective action procedure in which progressive discipline will "usually" be applied. Burrill stated in his affidavit:

> I relied on the policies and procedures as set forth in the Supervisor's Personnel Handbook and believed that they applied to me. I believed I would be given notice and the opportunity to correct any deficiencies in my performance. I believed I would not be terminated unless for cause.

August 3, 1992 Affidavit of James S. Burrill. My comparison of the facts in this case with those at issue in the above cited cases leads me to conclude that material questions of fact exist with respect to whether an implied contract of employment was formed between the parties. The disclaimer relied upon by GTE appears only in Burrill's employment application signed almost two months before he began his employment.

> Further, even if [an employee] can be accused of having entering [sic] into an employment at-will by signing the application [which contained a disclaimer], he is nevertheless entitled to enforce [the employer's] subsequent promise to terminate him in conformance with procedures set out in its handbook.

*Cronk v. Intermountain Rural Electrical Ass'n,* 7 I.E.R. Cases 545, 548, 1992 WL 161811 (Colo.App. April 2, 1992) (*Cronk II*). Burrill's unsuccessful request for a written contract does not preclude the possible formation of an implied contract at some subsequent time. These facts will certainly be considered by the trier of fact, but they can not be the basis for summary judgment at this stage of the proceeding. If summary judgment was not appropriate in *Cronk I* or *Allabashi,* cases in which the employee handbooks contained express dis-

---

**3.** It also appears that "the disclaimer was inconspicuously placed in an appendix to the handbook." *See Ferrera v. A.C. Nielsen,* 799 P.2d 458, 461 (Colo.App.1990).

**4.** The parties have provided only a fragmented portion of the Handbook, but I must assume that all critical and relevant aspects have been included.

claimers, then judgment as a matter of law is also inappropriate in this case.

### B. Promissory Estoppel

■ *Keenan*'s second exception to the at will presumption permits an employee:

to enforce the termination procedures under a theory of promissory estoppel if he can demonstrate that the employer should reasonably have expected the employee to consider the employee manual as a commitment from the employer to follow the termination procedure, that the employee reasonably relied on the termination procedures to his detriment, and that injustice can be avoided only by enforcement of the termination procedures.

*Keenan*, 731 P.2d at 712.

GTE argues that Burrill cannot demonstrate 1) any commitment from GTE to follow any provision of the Handbook, 2) detrimental reliance on his part because he did not forgo any other opportunities or 3) that an injustice has occurred. My review of the facts as presented leads me to conclude that material questions of fact remain which preclude summary judgment on this claim as well.

As indicated above, the Employee Rights section of the Operating Philosophy of the Handbook appears to require just cause for termination. Additionally, the Work Rules & Regulations section of the Handbook establishes a progressive discipline system that is "usually" to be applied. Burrill's August 3, 1992 Affidavit states:

At the beginning of my employment with GTE, I was given a copy of the Supervisor's Personnel Handbook. I was instructed, and the Handbook itself instructed me, to follow the procedures set forth in the Handbook. I was advised, and understood, that these were to be followed by me as a condition of my employment and that failure to do so could result in termination of my employment with the company. I relied on the policies and procedures as set forth in the Supervisor's Personnel Handbook and believed that they applied to me. I believed I would be given notice and the opportunity to correct any deficiencies in my performance. I believed I would not be terminated unless for cause.

I conclude that a material question of fact remains as to whether Burrill could reasonably have expected the provisions of the Handbook to be a commitment on the part of GTE to its employees. It is also for the trier of fact to determine whether Burrill's continued service with GTE and his departure from a twelve year career with Martin Marietta to take the position of JSIC Program manager amounted to detrimental reliance. If these issues are resolved in Burrill's favor, then justice would clearly require the enforcement of the termination procedures. Summary judgment in GTE's favor on Burrill's promissory estoppel claim would be inappropriate.

### C. Applicability of the Handbook to Burrill's Situation

■ GTE next argues that even if an implied employment contract existed between the parties, the formal steps of the Corrective Action Procedure detailed in the Handbook were not applicable to Burrill because he was "laid off" rather than discharged or terminated. GTE contends that Burrill was removed as the JSIC Program manager because of disciplinary rather than performance oriented problems. It was only after this removal that GTE discovered that no other positions were available for him.

The section of the Handbook dealing with Termination And Retirement defines a layoff:

Employees are considered to be on layoff when their employment is terminated by the Company because of a reduction in the work force due to lack of work and is not a reflection on the employee's performance.

Section IX, 2.3. Whether Burrill was laid off as that term is defined in the Handbook is a question of material fact. The plaintiff alleges that his layoff was in actuality a discharge for poor performance, and that the progressive steps of the Corrective Action Procedure should have applied. The trier of fact must determine the applicability of the Handbook provisions to this case.

Specifically, questions remain as to whether Burrill was removed as the JSIC Program manager for disciplinary or performance related reasons and whether his departure was in the nature of a lay off or a discharge. Summary judgment on this ground would not be appropriate.

### D. GTE's Compliance With the Provisions of the Handbook

■ GTE finally argues that even if the terms of the Handbook did apply to Burrill's departure, it fully complied with all aspects of the Handbook's termination and discipline requirements. GTE alleges that its managers had numerous informal counseling sessions with Burrill, and that he had been put on notice that his performance was lacking. The plaintiff vigorously disputes the fact that he received any counseling as required by the Handbook and also disputes the assertion that his performance was deficient.

Because I believe that there are questions regarding the counseling that Burrill may have received and also questions relating to whether such counseling, if it was given, complied with the terms of the handbook, I must deny summary judgment on these grounds. Additionally, it is not clear to me in light of the JSIC Program's improving Award fee percentages that Burrill's performance was deficient. Because of these uncertainties, I again must agree with the plaintiff and will deny summary judgment.

### II. BREACH OF EXPRESS COVENANT OF GOOD FAITH AND FAIR DEALING

■ Burrill alleges that through its policies and procedures, GTE affirmatively promised to treat its employees fairly and in good faith. He contends that his abrupt termination without notice constituted a breach of that express promise. GTE has moved for summary judgment on this claim

arguing that such a theory of recovery has not been recognized in Colorado and that the Colorado Court of Appeals has ruled conclusively that an *implied* covenant of good faith and fair dealing does not extend to employment contracts. *See Pittman v. Larson Distributing Co.*, 724 P.2d 1379, 1385 (Colo.App.1986); *Farmer v. Central Bancorporation, Inc.*, 761 P.2d 220, 222 (Colo.App.1988). However, the plaintiff has alleged a breach of an *express* covenant of good faith and fair dealing, a claim that the Colorado courts have not precluded.

As Judge Finesilver noted in *Stahl v. Sun Microsystems, Inc.*, 775 F.Supp. 1394, 1397 (D.Colo.1991), "the creation of an express contract is a question of fact for the jury. Whether the policy statements were too vague to constitute an express agreement is likewise a question for the jury." *See also Price v. Federal Express Corp.*, 660 F.Supp. 1388, 1393–95 (D.Colo.1987); *Rosales v. AT & T Information Systems, Inc.* 702 F.Supp. 1489, 1502–03 (D.Colo. 1988). Similarly in this case, whether the terms and language of the Supervisor's Personnel Handbook constituted an express covenant on the part of GTE to act fairly and in good faith is an issue that must be left to the trier of fact.[5] In light of the alleged facts surrounding Burrill's "lay off", GTE's motion for summary judgment on Burrill's second claim for relief will be DENIED.

IT IS THEREFORE ORDERED THAT:

(1) The motion of the defendant, GTE Government Systems Corporation, for summary judgment on James S. Burrill's first claim for relief alleging breach of an employment agreement is *DENIED*.

(2) The motion of the defendant, GTE Government Systems Corporation, for summary judgment on James S.

---

5. Burrill points to the following language in the Handbook: "All employees have the right ... to expect and to receive fair and courteous treatment in dealings with supervisory and non-supervisory employees...." Operating Philosophy, 2.0. "It is the intent of the Company to do what is fair and right at all times in the day-to- day relations with all employees." Section V, 4.0. "Termination may occur for a variety of reasons and under different circumstances. To assure consistent treatment of terminating employees, regardless of the reasons or circumstances involved, the procedure set forth in this section must be followed." Section IX, 1.0.

Burrill's second claim for relief alleging breach of an express covenant of good faith and fair dealing is also *DENIED*.

(3) The motion of the plaintiff, James S. Burrill, to dismiss his third claim for relief alleging outrageous conduct is *GRANTED*.