Patricia HEALION, Plaintiff,

v.

**GREAT–WEST LIFE ASSURANCE COMPANY, Defendant.**

Civ. A. No. 92–K–2230.

United States District Court,
D. Colorado.

Sept. 20, 1993.

Barry D. Roseman, Denver, CO, for plaintiff.

John M. Husband, and Judith A. Biggs, Holland and Hart, Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This matter is before me on defendant Great–West Life Assurance Company's motion for summary judgment on plaintiff Patricia Healion's claims for breach of contract, promissory estoppel, wrongful discharge and discrimination based on disability. Great–West claims that it is entitled to summary judgment because (1) Healion voluntarily resigned her position, (2) Great–West's employee handbook did not create an express or implied employment contract, and (3) Healion's injuries were not severe enough to fall within the Colorado Antidiscrimination Act and Great–West was not required by the Act to incur expense to accommodate her disability. I grant the motion in part and deny it in part.

### I. Facts.

Healion was employed by Great–West as a long-term disability consultant. In this position, she reviewed applications for long-term disability from Great–West policyholders to determine whether they complied with company requirements. She routinely used a hand-held dictating machine and, as a result, developed tendinitis in her right thumb. Healion reported this injury to her employer and, on July 16, 1991, filed a workers' compensation claim. Her physician restricted her from writing, and her workload was reduced.

By approximately August, 1991, Healion's tendinitis subsided, and she was able to work without physical restrictions. The tendinitis returned, however, in late October or early November. At about the same time, Healion's supervisor's confronted Healion with problems in her job performance. On November 1, 1991, Healion attended a meeting with several supervisors and was given a verbal warning read by one supervisor. After the meeting, Healion told Sherry Garcia, a manager in Great–West's personnel department, that she felt threatened because of the tone in which the warning was given. Garcia then advised Healion that if she ever felt uncomfortable at a meeting in the future to contact her.

A second meeting occurred on December 5, 1991. Two of Healion's supervisors, Mary Bowers and Donna Bagford, gave Healion a written and verbal warning about her performance and told her she would be placed on probation if she did not improve. Healion was asked to sign the written warning, but

she refused and left the meeting without explanation. Healion returned to her desk, packed up certain personal belongings, threw away work papers and left the office. She did not return to work the following morning, but attempted to telephone Garcia. When Garcia returned her call, she informed Healion that Great–West had determined that she had resigned from her employment with the company.

Healion then instituted the instant action, which was removed to this court on November 12, 1992. She asserts three claims. In the first, premised on breach of contract and promissory estoppel, she alleges that Great–West fired her in violation of the policies contained in its employee handbook. In her second claim, based on the public policy exception to the employment at will doctrine, Healion alleges that the company terminated her in retaliation for her worker's compensation claim. Finally, Healion pleads a claim for discriminatory discharge based on handicap under the Colorado Antidiscrimination Act. Great–West now moves for summary judgment on these claims.

## II.  Merits.

### A.  Standards for Summary Judgment.

Under Fed.R.Civ.P. 56(c), I must determine whether there is no genuine issue of material fact and whether Great–West is entitled to judgment as a matter of law. In considering Great–West's motion, I construe the evidence and draw all inferences in the light most favorable to Healion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Summary judgment must be granted against Healion if she fails to establish the existence of an element essential to her case, and on which she will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). For a dispute about a material fact to be genuine, there must be sufficient evidence upon which a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

### B.  Constructive Resignation.

Great–West's first argument is that all three of Healion's claims fail because there is no genuine issue of material fact that she voluntarily resigned her position with the company. Great–West relies on excerpts from Healion's deposition in which she admitted that she left the December 5 meeting with her supervisors without explanation, packed up personal belongs, threw away papers and other items and failed to report to work the next day. Great–West further contends that its conclusion that Healion resigned may not be second-guessed. I disagree with both propositions.

First, construing the evidence and reasonable inferences in the light most favorable to Healion, there is a genuine issue of fact whether Healion resigned or was terminated. In her deposition, Healion explained that she walked out of the meeting with her supervisors based on the earlier advice of Garcia. (Healion Dep. at 52–54.) Fearing she was about to be fired, she packed up her personal belongings, reasoning that she could always bring them back to the office if she was permitted to retain her position. (*Id.* at 56.) Healion further stated that the papers she threw away were copies of earlier audits she had completed which she discarded for privacy reasons and which were not work in progress. (*Id.* at 56–58.) Finally, Healion claimed that did not return to work the next day because she felt she needed to contact the personnel department for advice regarding her supervisors' demand that she sign the written warning. (*Id.* at 54.) When she eventually reached Garcia, Healion was told that the company's view was that she had resigned her position because of her improper handling of the matter. (Garcia Dep. at 37.)

Second, Great–West's assertion that its interpretation of the facts concerning Healion's departure may not be questioned is without merit. Great–West relies on three cases, *Wing v. JMB Property Management Corp.,* 714 P.2d 916 (Colo.App.1985), *Demars v. General Dynamics Corp.,* 779 F.2d 95 (1st Cir.1985), and *Lucas v. Dover Corp.,* 857 F.2d 1397 (10th Cir.1988). In *Wing,* there was no question that the employee in that

case was terminated. 714 P.2d at 917. The court simply rejected the employee's claim that the employer could be held liable in tort for negligently discharging her. *Id.* at 918. In *Demars,* the court rejected a claim for "negligent recall," in which the employer mistakenly recalled an employee after he had retired and then was discharged after he left other employment in response to the recall. 779 F.2d at 99. The issue of resignation versus termination was never raised. Likewise, *Lucas* is completely inapposite; the employees in that case were terminated in a reduction in force. 857 F.2d at 1398. Language in *Lucas* concerning second-guessing an employer's business judgment dealt with an employer's decision as to who was best qualified to fill a consolidated position. *Id.* at 1403.

In sum, there is no support for Great-West's contention that a court may not question its judgment that Healion voluntarily resigned. Whether Healion voluntarily resigned or was instead terminated is an issue of fact for the jury's consideration. *See Schultz v. Baumgart,* 738 F.2d 231, 233, 239 (7th Cir.1984); *Johnson v. Electrolux Corp.,* 763 F.Supp. 1181, 1186 (D.Conn.1991); *Townsend v. L.W.M. Mgmt., Inc.,* 64 Md. App. 55, 494 A.2d 239, 245 (1984), *cert. denied,* 304 Md. 300, 498 A.2d 1186 (1985). Here, there is evidence upon which a reasonable jury could conclude that Healion was terminated. Therefore, Great-West is not entitled to summary judgment on Healion's claims based on its contention that Healion voluntarily resigned.

### C. Breach of Contract and Promissory Estoppel Claims.

Great-West's second contention is that Healion's breach of contract and promissory estoppel claims are barred by language in the company's employee handbook disclaiming the existence of a contract. I agree.

■ Under Colorado law, an employee hired for an indefinite period of time is presumed to be an "at will" employee whose position can be terminated without cause or notice and whose termination does not give rise to a cause of action. *See Burrill v. GTE Gov't Sys. Corp.,* 804 F.Supp. 1356, 1358 (D.Colo.1992); *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708, 711 (Colo.1987). The presumption of "at will" employment can be rebutted by evidence that policies and procedures contained in a written employee handbook constitute an express or implied employment contract. *Burrill,* 804 F.Supp. at 1358; *Keenan,* 731 P.2d at 711. In these circumstances, the employee terminated in violation of these policies and procedures may bring an action for breach of contract or promissory estoppel. *Burrill,* 804 F.Supp. at 1358–59; *Keenan,* 731 P.2d at 711–12. When the handbook contains a clear and conspicuous disclaimer abrogating an intent to create such an employment agreement, however, these claims fail. *See, e.g., Therrien v. United Air Lines, Inc.,* 670 F.Supp. 1517, 1523 (D.Colo.1987); *Ferrera v. Nielsen,* 799 P.2d 458, 461 (Colo.App.1990). Whether a disclaimer is conspicuous is a question of law. *Sanchez v. Life Care Centers of Am., Inc.,* 855 P.2d 1256, 1258 (Wyo.1993).

■ Here, the disclaimer appears on the last page of the preface of the handbook in a section entitled "About Your Handbook." It is printed in ordinary type and reads:

> The information contained in this Handbook is for general information only. The language used is not intended to create or constitute an employment agreement with any employee. The policies, practices, and programs described in the Handbook are subject to any applicable rules, regulations and provisions as approved by the Company. Great-West Life reserves the right to make final decisions concerning the interpretation and application of the policies, practices, and programs, and to change or discontinue them at any point.

(Def's Mot.Summ.J., Ex. B.) In addition, Healion signed a separate document duplicating this language in which she acknowledged having read and received a copy of the handbook. The handbook itself provides that Great-West "may terminate the employment relationship with or without cause, at any time." (*Id.*) Under these circumstances I find as a matter of law that the employee handbook did not alter Healion's status as an at-will employee, and her claims for breach of

**1376**

contract and promissory estoppel must fail. *See Ferrera,* 799 P.2d at 461; *Prezzy v. Food Lion, Inc.,* No. 5:89–445–6, 1989 WL 223521 (D.S.C. Aug. 1, 1989) (disclaimer in regular typeface contained in introductory page labeled "About Your Handbook" sufficiently conspicuous that a reasonable reader of the handbook would have noticed it).

### D. *Claim under Colorado Anti–Discrimination Act.*

Great–West's final argument is that Healion fails to state a claim under the Colorado Antidiscrimination Act, Colo.Rev.Stat. § 24–34–401 to –405 (1988) (the "Act"), because she was not "disabled" under the meaning of the Act and Great–West could not reasonably accommodate her handicap without expending additional sums of money. Neither contention is persuasive.

■ Under the Act, a person is "disabled" if that person "(1) has a physical impairment which substantially limits one or more of such persons' major life activities, (2) has a record of such impairment, *or* (3) is regarded as having such an impairment." *AT & T Technologies, Inc. v. Royston,* 772 P.2d 1182, 1185 (Colo.App.1989) (emphasis added); *see also Gamble v. Levitz Furniture Co.,* 759 P.2d 761, 764 (Colo.App.1988) (above definitional elements are disjunctive), *cert. denied,* 782 P.2d 1197 (Colo.1989). Thus, even if Healion is unable to prove that she has or had an impairment which substantially limits one or more of her major life functions, she can still succeed on her claim if she can demonstrate that Great West regarded her as having such an impairment. *Colorado Civil Rights Comm'n v. North Washington Fire Protection District,* 772 P.2d 70, 78 (Colo.1989).

■ Furthermore, Great–West misses the mark by arguing that Healion's third claim fails because the voice-activated dictating machine she requested was not a reasonable accommodation because Great West was not required to expend any sums under the Act. *See* Colo.Rev.Stat. § 24–34–305(2). Once an employee has made out a prima facie showing of employment discrimination, the burden then shifts to the *employer* to show by a preponderance of the evidence that the disqualifying factors were justified under the business necessity defense or that there is no reasonable accommodation that the employer can make with regard to the handicap, that the handicap actually disqualifies the applicant from the job and that the handicap has significant impact on the job.

*North Washington,* 772 P.2d at 80. Great–West, not Healion, bears the burden of proof on the issue of reasonable accommodation. That the voice activated dictating machine may not have been a reasonable accommodation does not mean that other alternatives were not available to accommodate Healion's alleged disability. Accordingly,

IT IS ORDERED THAT Great–West's motion for summary judgment is GRANTED as to Healion's first claim for relief for breach of contract and promissory estoppel and is DENIED as to Healion's second and third claims for relief for wrongful discharge in violation of public policy and violation of the Colorado Antidiscrimination Act, respectively.