AT & T TECHNOLOGIES,
INC., Petitioner,

v.

Joe ROYSTON and the Colorado Civil
Rights Commission, Respondents.

No. 87CA1975.

Colorado Court of Appeals,
Div. C.

March 23, 1989.

Gary B. Witt, Denver, James D. Cutlip (on the briefs), Berkeley Heights, N.J., for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Aurora Ruiz–Hernandez, Asst. Atty. Gen., Denver, for respondents.

STERNBERG, Judge.

Respondent, AT & T Technologies, Inc. (AT & T), seeks review of an adverse order of the Colorado Civil Rights Commission (Commission), finding that it discriminated against an employee because of his handicap, and requiring it to reinstate the employee to his former position with back pay and benefits. We affirm.

Complainant, Joe Royston, had worked as an installer for AT & T and its predecessor beginning in 1969. At the time of his discharge, in April 1985, Royston had been classified as an Index 3 installer for ten years. In this classification, Royston was required to perform complex wiring, conduct basic equipment testing, and perform various clerical and service functions.

In August 1980, Royston sustained a work-related injury in a fall down some stairs. Dr. James Urban, an orthopedic surgeon, diagnosed the injury as a muscle strain to the upper back. Following the injury, Royston returned to work. Be-

tween August 1980 and May 1984, Royston experienced varying degrees of neck and shoulder pain, stiffness, and movement restrictions, which Dr. Urban attributed to the work injury. In May 1983, Dr. Urban placed Royston under what he opined would be permanent work restrictions. The restrictions were stated in general terms and required Royston to avoid heavy lifting and carrying, and to restrict the overhead use of his arms.

In April 1984, Royston was transferred to a bulk wiring assignment, which required him to perform wire wrapping on a full-time basis. Wire-wrapping is one of the job functions of an Index 3 installer; it involves pulling wire bundles through a frame, stripping the wires, and attaching them onto a circuit board using a wiring gun. Soon after being assigned to the task on a full-time basis, Royston began experiencing increased pain and difficulty in performing his work.

On May 9, 1984, Royston received a warning letter for failure to meet production requirements. He received a second warning on May 16, 1984, covering both production and quality of work. A third warning for failure to meet production standards was issued on June 5, 1984, resulting in a five-day suspension. Royston received two additional warning letters, and in October 1984, he was suspended for 30 days without pay for unsatisfactory performance.

During this time, Royston was seen several times by AT & T's company physicians, Dr. Roland Zarlengo and Dr. Ralph Wexler, as well as by his treating physician, Dr. Urban. The company doctors disagreed with Dr. Urban on whether the previously imposed work restrictions prevented Royston from performing wire wrapping. Although Dr. Urban conceded, after visiting Royston's work site, that wire wrapping was not technically within the work restrictions, his observations in January 1985 and again on March 12, 1985, led him to conclude that wire wrapping appeared to aggravate Royston's symptoms and that he should not be assigned to perform that task.

Notwithstanding Dr. Urban's recommendations, Royston was given a full-time wire wrapping assignment in March 1985, and one week later, he was terminated for unsatisfactory production and poor work quality.

Prior to his termination, Royston had filed two complaints of discrimination with the Colorado Civil Rights Commission: first, in June 1984, after he was suspended for five days without pay, and again, in October 1984, after he was suspended for 30 days without pay. On each occasion, the Commission's director found a lack of probable cause to believe that AT & T had violated § 24-34-401(1)(a), C.R.S. (1988 Repl.Vol. 10A). On each occasion, Royston did not file a timely appeal.

After his discharge, Royston filed a third complaint, alleging that he was illegally dismissed on the basis of his race, physical handicap, and in retaliation for filing the previous charges of discrimination. On July 12, 1986, the Commission's director found probable cause that AT & T had violated § 24-34-402(1)(a), C.R.S. (1988 Repl.Vol. 10A), and a hearing was held. The Commission determined that AT & T had discriminated against Royston on the basis of his handicap and, pursuant to § 24-34-405, C.R.S. (1988 Repl.Vol. 10A), ordered Royston's reinstatement with back pay, including projected overtime pay and full benefits.

I.

On review, AT & T contends that the Commission erred in determining that Royston established a prima facie case of handicap discrimination. AT & T asserts that Royston could physically perform wire wrapping but failed to do so in an acceptable manner and was discharged for unsatisfactory performance. Alternatively, the company argues that Royston's inability to perform the work demonstrates that he was not an "otherwise qualified" handicapped person within the meaning of § 24-34-402(1)(a), C.R.S. (1988 Repl.Vol. 10A). We reject both of these contentions.

■ It is unlawful for an employer "to discharge ... or to discriminate ... against any person otherwise qualified because of handicap." Section 24–34–402(1)(a), C.R.S. (1988 Repl.Vol. 10A). A handicapped individual is a person who (1) has a physical impairment which substantially limits one or more of such person's major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment. *Gamble v. Levitz Furniture Co.*, 759 P.2d 761 (Colo.App.1988); § 24–34–301(4), C.R.S. (1988 Repl.Vol. 10A). "Major life activities" are defined in the Commission's regulations as "functions such as caring for one's self, *performing manual tasks*, walking, seeing, hearing, speaking, reading, touching, learning and *working.*" Civil Rights Commission Rule 60.1 § B, 3 Code Colo. Reg. 708–1 (emphasis added).

■ Here, there is abundant evidence that Royston has suffered physical impairment and restrictions to varying degrees since his work injury in 1980. He was, at the time of his discharge, under medically imposed work restrictions and had been since May 1983.

Although there was a conflict in the medical testimony as to whether the work restrictions permitted Royston to perform wire wrapping, the Commission resolved that conflict by determining that extensive wire wrapping aggravates Royston's symptoms to a point that he cannot perform the function on a full-time basis. This finding is supported by substantial competent evidence and is therefore binding on review. *See* § 24–34–307(6), C.R.S. (1988 Repl.Vol. 10A); *Umberfield v. School District No. 11*, 185 Colo. 165, 522 P.2d 730 (1974). The Commission's conclusion that, at the time of his discharge, Royston suffered a physical handicap within the meaning of § 24–34–402(1)(a), C.R.S. (1988 Repl.Vol. 10A) has support in the record, and it correctly applied the law. Therefore, its conclusion was proper.

In addition, we reject AT & T's alternative contention that the Commission's findings concerning Royston's handicap compelled the conclusion that, as a result of the handicap, Royston was not otherwise qualified for the position.

The term "otherwise qualified" has not been defined by courts in this jurisdiction. Under the administrative definition, a person is otherwise qualified if, with reasonable accommodation, he can perform the essential functions of the job. Civil Rights Commission Rule 60.2 § B, 3 Code Colo. Reg. 708–1.

This definition parallels the federal regulatory definitions, 29 C.F.R. § 1613.702(f), and 45 C.F.R. § 84.3(K) (1987), which have been accepted by the federal courts. *See School Board v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) (fn. 17); *Daubert v. United States Postal Service*, 733 F.2d 1367 (10th Cir.1984); *Strathie v. Department of Transportation*, 716 F.2d 227 (3rd Cir.1983); *Bentivegna v. United States Department of Labor*, 694 F.2d 619 (9th Cir.1982); *Prewitt v. United States Postal Service*, 662 F.2d 292 (5th Cir.1981); *Nelson v. Thornburgh*, 567 F.Supp. 369 (E.D.Penn.1983).

■ Under this definition, an individual is not required to meet every stated employment requirement; rather, he must satisfy those requirements which are reasonable, legitimate, and necessary. *See Prewitt v. United States Postal Service, supra; Nelson v. Thornburgh, supra.* A legitimate physical requirement is one which is necessary for all positions and uniformly required of all employees. *Simon v. St. Louis County*, 656 F.2d 316 (8th Cir.1981). We find the foregoing cases persuasive and hold that a handicapped individual is "otherwise qualified" if, with reasonable accommodations, he can perform the reasonable, legitimate, and necessary functions of his job.

■ The Commission found that Royston cannot do any heavy or prolonged installation function above his head, and he is unable to perform wire wrapping on a full-time basis. The Commission also found, however, that, from the time of Royston's work injury in November 1980 until April 1984, he had performed a variety of installer duties, including wire wrapping, and

had done so without any question as to his competence or performance. The Commission further found, on supporting evidence, that wire wrapping on a full-time basis is not required of all installers, and it was only when Royston was assigned to full-time wire wrapping that he was unable to perform the job satisfactorily. The Commission concluded that Royston can perform the essential functions of the job, that useful work assignments are available which he can perform in spite of his physical limitations, and that the functions which he cannot perform are not reasonably necessary or uniformly required of all employees in his job classification.

The Commission's findings are supported by substantial evidence and the Commission correctly applied the law. Thus, it properly determined that, with reasonable accommodation, Royston was otherwise qualified to perform the reasonable, legitimate, and necessary functions of his job.

## II.

AT & T asserts that Royston failed to establish, as part of his prima facie case, that his disability could be reasonably accommodated. We disagree.

■ The federal courts have recognized that in certain instances, if an individual's qualifications are at issue as a result of his handicap, the individual must, as part of his prima facie case, make at least a facial showing that his handicap can be accommodated. *Prewitt v. United States Postal Service, supra; see also Gardner v. Morris*, 752 F.2d 1271 (8th Cir.1985). Because we adopt the regulatory definition of "otherwise qualified" as including individuals who can be reasonably accommodated, we agree that an employee must make at least a prima facie showing that his handicap can be accommodated. However, we agree with the Commission that Royston satisfied this requirement with evidence that he had performed his work duties satisfactorily until he was assigned to wire wrapping on a full-time basis.

■ The burden then shifted to AT & T to prove that Royston's handicap could not be reasonably accommodated, that the handicap "actually disqualified" Royston

from the job, and that the handicap had a "significant impact" on the job. Section 24–34–402(1)(a), C.R.S. (1988 Repl.Vol. 10A); *Colorado Civil Rights Commission v. Conagra Flour Milling Co.*, 736 P.2d 842 (Colo.App.1987).

The Commission determined, and we agree, that AT & T failed to meet its burden of proof. The record reflects that on several occasions Royston requested that he be assigned work other than full-time wire wrapping; however, the Commission found, on supporting evidence, that his requests were refused and no alternative work assignments were considered.

■ Contrary to AT & T's argument, we do not interpret the Commission's order as requiring AT & T to reassign Royston to another position or to alter substantially his present work assignment. Although there are some functions which Royston can only perform on a part-time basis, the order indicates that these functions can be intermixed with other job duties which Royston is fully capable of performing. Because AT & T presented no evidence showing that such an accommodation would be unreasonably burdensome, *see* § 24–34–402(1)(a), C.R.S. (1988 Repl.Vol. 10A), the order will be sustained.

## III.

■ We also disagree with AT & T's final contention that the Commission's determination that it had discriminated against Royston because of his handicap was contrary to its previous findings of no probable cause that AT & T had violated the law. As the previous findings were not quasi-judicial rulings, but merely administrative determinations, reached without the benefit of an adversarial hearing, the findings were not binding. *See Demetry v. Colorado Civil Rights Commission*, 752 P.2d 1070 (Colo.App.1988).

Order affirmed.

PLANK and NEY, JJ., concur.