Richard J. QUICKER, Plaintiff,

v.

AMERICAN V. MUELLER, American Hospital Supply Corporation and Baxter Travenol Laboratories, Inc., now Baxter Healthcare Corp., Defendants.

No. 85–B–2472.

United States District Court, D. Colorado.

May 4, 1989.

---

James L. Stone and Brent T. Johnson, Fairfield and Woods, P.C., Denver, Colo., for plaintiff.

Deana Willingham, Walberg & Willingham, Denver, Colo., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

BABCOCK, District Judge.

On March 2, 1989, a jury verdict was returned in Plaintiff's favor on his claims of age discrimination under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.*, and on his claim of handicap discrimination under the Colorado Antidiscrimination Act, C.R.S. § 24–34–401, *et seq.* Before trial, the parties stipulated that the following issues would be determined by the Court, if necessary, after the jury's verdict: equitable tolling of time limitation for filing age discrimination charge with the Equal Employment Opportunity Commission (EEOC); reinstatement or front pay; interest; and attorney fees. These issues (excluding attorney fees) have been briefed by the parties, and a hearing was held on April 28 and May 1, 1989, with respect to all issues except the amount of attorneys' fees. Based on the following findings of fact and conclusions of law, the Court determines that the time limitation for Plaintiff's filing his age discrimination charge with the EEOC was tolled equitably, that Plaintiff is entitled to reinstatement, and that he is entitled to an award of interest, costs, and attorney fees.

## FINDINGS OF FACT

Plaintiff was employed by American V. Mueller ("Mueller") as a sales representative from September 13, 1966, until May 17, 1985. Mueller was a division of American Hospital Supply Corporation, which later merged into Baxter Travenol Laboratories, Inc., now Baxter Healthcare Corp.

From 1969 through 1985, Plaintiff's sales territory was based in Denver, Colorado. Although the boundaries of Plaintiff's territory changed over the years, the majority of Plaintiff's business was in the Denver metropolitan area.

As required by Mueller, Plaintiff maintained a sales office within his home in the Denver area from 1969 through 1985. *See* Exhibit 35, p. 10. Mueller maintained no offices in Colorado other than the sales office in Plaintiff's home. Although, American Hospital Supply Division of American Hospital Supply Company maintained an office at the Denver Tech Center, Plaintiff visited that office on only two business/social occasions, once in the mid-1970's and once in the early 1980's.

Defendants never provided Plaintiff with a copy of an EEOC notice to post in Mueller's sales office in his home to advise him of his rights under the ADEA. Defendants did not in any other manner advise Plaintiff of his rights under the ADEA. Any notices with respect to employee rights under the ADEA which Defendants may have posted in other offices maintained by Defendants were not posted where they could readily be observed by Plaintiff. Such notices were not reasonably calculated to apprise Plaintiff of his rights and Plaintiff in fact did not observe any such EEOC poster advising him of his rights under the ADEA.

In November 1984, Plaintiff was told by David Kaysen, Mueller's western zone manager, that Plaintiff's territory was being greatly expanded. Plaintiff expressed concern that he would not be able to physically cover the expanded territory because of his physical handicap, idiopathic paroxysmal ventricular tachycardia. Defendants knew of Plaintiff's condition before he was assigned the Denver-based territory in 1969.

Plaintiff met with Gary Sheffield, Mueller's president, on December 12, 1984. Sheffield and Plaintiff discussed various possible solutions to plaintiff's inability to travel the expanded territory. Sheffield said that he would return to Chicago to discuss possible solutions with Kaysen and Carl Gatewood. Sheffield assured Plaintiff that he was involved in the situation, that he would get back in touch with Plaintiff in January, and that he should rest easy over the holidays.

On January 6, 1985, Sheffield telephoned Plaintiff and told him that there were no other job opportunities and it was appropriate to bring his fine career to an end. Plaintiff asked in this telephone conversation and in a later conversation on January 9, 1985, about other employment alternatives, including possible positions with other divisions of American Hospital Supply Company. Sheffield told Plaintiff that there were no other available positions. In March of 1985, Plaintiff again expressed to a Mueller representative, Roddy Clark, his interest in remaining employed and his need for a job.

Mueller had experienced two reductions in force in 1984. After each reduction in force, Mueller actively attempted to find other positions for laid-off employees, either within Mueller, within other divisions of American, or outside of the corporation. Although other sales positions within American Hospital Supply Corporation were open in Colorado between December 12, 1984, and May 17, 1985 (Exhibit 52), Mueller never informed Plaintiff that these positions were open or that he could apply for them.

Plaintiff's personal customer service was concentrated in the Denver-metropolitan and Colorado Springs market areas. However, Plaintiff successfully covered his outlying territory throughout his career by limited travel and "telemarketing." Plaintiff's recognized, consistent sales success led Mueller over the years to accommodate his handicap by not requiring his attendance at national sales meetings, allowing limited travel in his territory, and permitting, in effect, some telemarketing. Testimony concerning any policy of Defendants that requires consistent personal sales service to all outlying accounts lacks credibility for lack of proof of past and present enforcement of any such policy. Here, Plaintiff can perform the essential functions of his job in spite of his physical limitations. Any functions that he cannot perform are not reasonably necessary for his sales performance or are not uniformally required of all employees in Plaintiff's job classification.

Various representatives of Defendants testified at trial that it would have been acceptable for Plaintiff to cover the outlying accounts of his expanded territory by telephone (telemarketing). However, no representative ever told Plaintiff before his last day of employment on May 17, 1985, that he could have covered the outlying accounts of his newly expanded territory by telemarketing. Instead, Defendants led Plaintiff to believe that he would have to physically travel the expanded territory, and that he would not be allowed to contin-

ue as a sales representative in that territory if he were unable to do so.

When Kaysen and Gatewood hired Schlatter to replace Plaintiff in December 1984, they instructed Schlatter not to discuss his hiring with anyone. Schlatter was not an innocent party, as he had demanded that he be the only general line sales representative in Plaintiff's territory. This meant that Plaintiff would have to be removed from the Denver-based territory. In April 1985, Schlatter reluctantly revealed the date of his hiring to Plaintiff in response to Plaintiff's direct questions. (December 1984 was a time when Sheffield had led Plaintiff to believe that he was actively seeking a solution to Plaintiff's problem.) Schlatter asked that Plaintiff not disclose to Kaysen or Gatewood that Schlatter had revealed to Plaintiff the truth as to his hiring.

On April 22, 1985, shortly after learning the truth of Schlatter's hiring in December 1984, Plaintiff attempted to consult with an attorney, Mr. Lee, with respect to the termination of his employment. After a few minutes of attempting to set forth the facts for Lee, however, Lee instructed Plaintiff to prepare a written chronology of events for him to review, after which they would discuss the situation. No legal advice was provided to Plaintiff on this occasion regarding his termination.

On June 17, 1985, Plaintiff submitted a written chronology of events to Lee's partner, Mr. Medsker. Plaintiff met with Medsker to discuss the situation on June 18, 1985. This was the first consultation between Plaintiff and an attorney regarding this termination from employment with Defendants.

On June 21, 1985, Medsker sent a letter to the vice president of personnel of American V. Mueller (Exhibit C–15). That letter was received by Defendants on June 24, 1985. It states in part that, "it appears that Mr. Quicker was terminated for no just cause other than that his age and health condition had become a burden to the company." Thus, 169 days after the January 6, 1985, telephone conversation in which Plaintiff first learned that his employment would be terminated, Defendants were on notice of Plaintiff's claim that his age was a factor in his termination.

On July 22, 1985, Medsker directed Plaintiff to go to the EEOC office to file a charge of age discrimination. At no time before this date was Plaintiff aware that such a charge either could or must be filed with the EEOC. Plaintiff promptly filed a charge of age discrimination with the EEOC on July 24, 1985. Plaintiff then learned for the first time that there was a 180–day time limit for filing a charge of age discrimination.

Consequently, Plaintiff's charge of age discrimination was filed 199 days after January 6, 1985, the date on which Plaintiff was first informed that his employment was being terminated. However, there was no prejudice to Defendants by filing on the 199th day. Defendants had knowledge within the 180–day period of Plaintiff's claim that his age was a factor in his termination.

Plaintiff's failure to file his charge of age discrimination with the EEOC within 180 days of termination was caused directly by the Defendants' failure to provide his sales office with the EEOC notice or to otherwise inform him of his rights under the ADEA. It was also caused directly by Defendant actively misleading Plaintiff concerning the basis for his cause of action.

As one defense witnesses, Bill Moore, testified, it would take several years for a general line sales representative to develop a sales territory. Mueller's sales representatives sell products primarily to hospitals. Developing long-term credibility and good business relationships with those hospitals is an important factor in the success of Mueller's sales representatives. As evidenced by the growth of Plaintiff's income while employed as the sales representative in the Denver-based territory (Exhibit 46), and as evidenced by the numerous awards which Plaintiff received from Defendants reflecting his status as a national sales leader, Plaintiff had developed the business within the Denver-based sales territory to a very high level.

Plaintiff's reinstatement to a sales territory other than the Denver-based territory would deprive him of the benefit of the long-term business relationships which he developed over the years in the Denver-based territory and would not constitute reinstatement to a position substantially equivalent to the position which Plaintiff would have held but for Defendants' unlawful discrimination. Reinstatement as Defendants' sales representative for a Denver-based territory is thus necessary to provide whole relief to Plaintiff with respect to Defendants' unlawful discrimination.

Plaintiff's physician continues to advise him to avoid stressful traveling, because of his heart condition. Although Plaintiff has not had an attack of ventricular tachycardia requiring hospitalization in many years, it is possible that stressful traveling could provoke such attacks. Nevertheless, Plaintiff can reasonably travel regularly along the I-25 corridor between Ft. Collins, Colorado and Pueblo, Colorado. He can also reasonably travel occasionally along the Platte and Arkansas River valleys of eastern Colorado. Although personal account service is preferred, Plaintiff's sales history shows that he can reasonably cover other outlying accounts by telemarketing when he would find physical travel to those accounts to be too stressful.

Plaintiff is entitled to $20,276.64 stipulated prejudgment interest as of May 2, 1989. Additional prejudgment interest accrues at the rate of $28.48 per day. He is also entitled to $49.68 per day back pay damages from the date of trial, February 21, 1989 to the date of judgment.

CONCLUSIONS OF LAW

I.

Equitable Tolling

Defendants contend that the statutory period for filing an EEOC charge commenced running on January 6, 1985, when Plaintiff was first verbally informed that his employment with Defendants was to be terminated, and lapsed on July 5, 1985, 19 days before his charge was filed with the EEOC. The Court disagrees.

A person challenging a discriminatory employment practice under the ADEA must file an administrative charge with the EEOC within 180 days of the alleged unlawful practice if, as is the case here, no proper state agency procedure is available. 29 U.S.C. § 626(D). The 180-day period for filing an EEOC charge begins to run when the alleged unlawful employment decision is communicated to the employee. *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980). However, the 180-day filing period may be equitably tolled when warranted by the circumstances of the case. *See e.g., Zipes v. Trans World Airlines*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982).

Plaintiff filed his EEOC charge on July 24, 1985. If the statute is strictly applied here, the 180-day period lapsed on July 5, 1985, 180 days after January 6, 1985.

The Court concludes that the facts of this case warrant equitable tolling of the statute of limitations because Defendants failed to post a notice informing Plaintiff of his rights under the ADEA as required by 29 U.S.C. § 627 and 29 C.F.R. § 1627.10. Plaintiff had no actual knowledge of the EEOC filing requirements, and once he acquired such knowledge, he promptly filed his charge two days later. Defendants' failure to post the required notice directly contributed to Plaintiff's failure to file his charge within 180 days of January 6, 1987, and the period of limitations should thus be tolled. *See Dartt v. Shell Oil Company*, 539 F.2d 1256 (10th Cir.1976); *Charlier v. S.C. Johnson & Son, Inc.*, 556 F.2d 761 (5th Cir.1977); *see also Quicker v. Civil Rights Commission*, 747 P.2d 682 (Colo. App.1987).

The facts of this case also warrant equitable tolling of the statute of limitations because Defendants actively misled Plaintiff with respect to his cause of action. By actively concealing the manner in which they hired Plaintiff's replacement, by concealing the fact that there were other sales positions open in Colorado, and by leading

Plaintiff to believe that he would have to physically travel the newly expanded territory, Defendants made Plaintiff's discharge appear less wrongful than it actually was, making it less likely that Plaintiff would seek legal redress. In addition to Defendants' failure to post notices, Defendants' active misleading of Plaintiff directly contributed to his failure to file his charge of age discrimination within 180 days of January 6, 1985, and hence the period should be tolled. *See Wilkerson v. Siegfried Insurance Agency, Inc.*, 683 F.2d 344 (10th Cir.1982).

A further factor supporting equitable tolling in this case is the absence of prejudice to Defendants by tolling the statute. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). The letter from Plaintiff's original counsel to Defendants placed Defendants on notice of Plaintiff's claim of age discrimination 169 days after January 6, 1985.

■ Contrary to Defendants' contention, Plaintiff's consultation with an attorney within the 180 day period does not preclude equitable tolling. Rather, "the period will begin to run from the time that the employee acquires actual knowledge of the rights or retains an attorney." *Vance v. Whirlpool Corp.*, 716 F.2d 1010, 1013 (4th Cir. 1983); *Kephart v. Institute of Gas Technology*, 581 F.2d 1287 (7th Cir.1978); *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3rd Cir.1977). *See Quicker v. Colorado Civil Rights Commission, supra.* Accordingly, the period of limitations did not begin to run here until June 18, 1985, the date of the first actual consultation between Plaintiff and an attorney with respect to his termination from employment with Defendants. As of that date Plaintiff may be held to have constructive notice of his rights under the ADEA. Plaintiff's charge of discrimination was filed with the EEOC 36 days later, within the 180–day period of limitations.

## II.

### Reinstatement

■ Defendants contend that although Plaintiff is entitled to reinstatement, it is only to the first available comparable territory and the Court should retain jurisdiction in the meantime to periodically determine Plaintiff's lost income, if any. To the contrary, under the equities here, and to promote finality, the Court concludes that Plaintiff is entitled to immediate reinstatement as a general sales representative for Defendants' Denver-based territory under both his Federal Age Discrimination claim and his Colorado Handicap Discrimination Claim. 29 U.S.C. § 626(b); C.R.S. Section 24–34–405.

Whole relief requires that Plaintiff be reinstated as Defendants' general sales representative for the Denver-based territory. Although immediate reinstatement will require bumping his replacement, Schlatter, the circumstances of this case warrant such reinstatement. *Walters v. City of Atlanta*, 803 F.2d 1135 (11th Cir. 1986); *Lander v. Hodel*, 1988 W.L. 122580 (D.D.C.1988); Equal Employment Opportunity Commission Policy Statement on Remedies and Relief for Individual Cases of Unlawful Discrimination, 29 C.F.R. Part 1613, Appendix A.

Defendants have only one Denver-based general sales representative. Plaintiff had developed the Denver-based territory for approximately fifteen years. Moreover, Plaintiff's replacement is not innocent with respect to his replacement of Plaintiff. Accordingly, it is appropriate and just to order immediate reinstatement of Plaintiff to the Denver-based sales territory. *See Spagnuolo v. Whirlpool Corp.*, 717 F.2d 114 (4th Cir.1983).

■ Furthermore, telemarketing is an acceptable method for Plaintiff to cover, in part, the outlying accounts in the Platte and Arkansas River valleys of eastern Colorado. Stressful travel to the other outlying accounts in the Denver-based territory as now constituted has the potential for provoking in Plaintiff additional attacks of ventricular tachycardia. Thus, a just and reasonable term of reinstatement and accommodation is that Plaintiff be allowed to cover such outlying accounts in whole or in

part by telemarketing. *See AT & T Technologies, Inc. v. Royston,* 772 P.2d. 1182 (Colo.App.1989). In the alternative, the Court concludes that Defendant should be given the option to redefine the Denver-based territory to include only Colorado, east of the Continental Divide.

## III.

### Other Relief

As stipulated, $20,276.64 prejudgment interest shall be awarded to Plaintiff through May 2, 1989. Additional prejudgment interest shall be awarded to Plaintiff to the date of judgment at the daily rate of $28.48. Plaintiff also is entitled to back pay damages from February 21, 1989 to the date of judgment at $49.68 per day.

Plaintiff is further entitled to post-judgment interest at the higher of the rates available under Colorado or Federal law. Unless this judgment is appealed by Defendants, Colorado law provides for post-judgment interest at the rate of 8% per annum, compounded annually. C.R.S. Section 5–12–102(4)(b). The current post-judgment interest rate in effect under Federal law pursuant to 28 U.S.C. § 1961 is 9.51%. Accordingly, the higher of those two interest rates is 9.51%, which rate shall apply to the judgment entered against Defendants, compounded annually, unless Defendants appeal the judgment, in which case the applicable interest rate shall be the higher of 9.51% or the rate in effect from time to time pursuant to C.R.S. Section 5–12–106.

Plaintiff is also entitled to an award of reasonable attorneys fees. 29 U.S.C. § 626(b). And, as prevailing party, Plaintiff is entitled to an award of costs, pursuant to 28 U.S.C. § 1920 and Rule 54(d) of the Federal Rules of Civil Procedure.

Authorized relief under both Federal and Colorado law includes the required posting of notices. C.R.S. Section 24–34–405; 29 U.S.C. § 626(b). In order to effectuate the purposes of the State and Federal statues, it is appropriate that Defendants be ordered to post the EEOC notice at each of its facilities, including, without limitation, each sales office maintained in the homes of its sales representatives, and that Defendants be required to post the Colorado Civil Rights Division notice in each facility within the State of Colorado, including, without limitation, each sales office maintained in the homes of its sales representatives. In addition, it is appropriate that Defendants be required to deliver to each of its sales representatives, and post in each of its facilities, a notice in the form attached as Appendix A. *See e.g.,* EEOC Policy Statement, 29 C.F.R. Part 1613, Appendix A.

### ORDER

On the basis of the foregoing findings of fact and conclusions of law, the Court ORDERS:

1. Judgment shall enter in favor of Richard J. Quicker and against American V. Mueller, American Hospital Supply Corporation, Baxter Travenol Laboratories, Inc., and Baxter Healthcare Corporation (collectively "Defendants") jointly and severally as follows:

(a) $156,334.96 representing the jury verdict of $152,758.00 plus $3,576.96 additional back pay and benefit damages from February 21, 1989, to the date of judgment computed at the rate of $49.68 per day; and

(b) Prejudgment interest in the amount of 20,276.64, plus $56.96, as additional prejudgment interest from May 2, 1989, to the date of judgment computed at the rate of $28.48 per day; and

(c) Postjudgment interest shall be computed as hereinabove provided.

2. Defendants are ordered immediately to reinstate Plaintiff as the exclusive general line sales representative for the Denver-based territory currently held by James Schlatter. Defendants shall allow Plaintiff to cover the Platte and Arkansas River valley accounts in part by telemarketing, and the remaining outlying accounts by telemarketing. Alternatively, Defendants may restructure the Denver-based territory to be Colorado, east of the Continental Divide. Outlying accounts of such restructured territory are defined to include those

outside the I–25 corridor from Ft. Collins, Colorado to Pueblo, Colorado. Plaintiff shall be accommodated to cover outlying accounts in part by telemarketing.

3. Defendants are ordered immediately to reinstate Plaintiff to all benefit plans, including coverage under all insurance programs currently in effect for Defendants' sales representatives.

4. Defendants are ordered not to retaliate against Plaintiff or take any adverse action against Plaintiff by virtue of his having prevailed in this action, or as a result of this order of reinstatement.

5. Defendants are ordered to post the current EEOC notice advising employees of their rights under Federal Antidiscrimination laws at all offices of Defendants including, without limitation, all sales offices maintained by Defendants' sales representatives in their homes, and Defendants are hereby ordered to post at all Defendants' offices and distribute to all Defendants' sales representatives a notice in the form attached hereto as Appendix A no later than thirty days from the date of this Order. Within forty-five days from the date of this Order, Defendants shall file with the Court an affidavit executed by an individual with personal knowledge establishing that Defendants have complied with this portion of the Court's order;

6. Plaintiff is awarded all applicable court costs, and Plaintiff shall submit a bill of costs within twenty days after the date of this judgment;

7. Plaintiff is entitled to an award of reasonable attorney fees, and shall submit a brief with affidavit and supporting documentation of attorney fees within twenty days of the date of this order. Defendants shall respond thereto within twenty days of submission; and

8. There being no just reason for delay, judgment shall immediately enter in accordance with the foregoing Order, provided, however, that the amount of attorney fees to be awarded to Plaintiff shall be determined in supplementary proceedings. The Court shall retain jurisdiction to consider any additional issues which may arise in connection with the reinstatement of Plaintiff to employment with Defendants.

## APPENDIX A

### NOTICE TO ALL EMPLOYEES

1. This Notice is being given pursuant to an Order of the United States District Court for the District of Colorado in the case of *Richard J. Quicker v. American V. Mueller, et al.,* —— F.Supp. —— Civil Action No. 85–B–2472. In that case American V. Mueller, American Hospital Supply Corporation, Baxter Travenol Laboratories, Inc., and Baxter HealthCare Corp. ("Defendants") were found liable to Richard J. Quicker for unlawful age discrimination and unlawful handicap discrimination in employment.

2. Defendants will reinstate Richard J. Quicker to employment and make him whole for all losses which he suffered as a result of the discrimination against him.

3. Defendants will provide notice to its employees of their rights under Federal Antidiscrimination laws and will provide notice to its Colorado employees of their rights under Colorado Antidiscrimination laws, by posting in all of its facilities, including, without limitation the sales offices maintained by Defendants sales representatives in their homes, notices as required by Federal and Colorado law to advise employees of their rights.

4. Defendants will not discharge its employees on the basis of their age or their physical handicaps.

5. Defendants have adopted an equal employment opportunity policy and will insure that all supervisors abide by the requirements of that policy, that employees not be discriminated against on the basis of their age or physical handicap.

DATED this ___ day of _____, 1989.

By:_____

Title:_____